

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 22, 2022**

_____

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 (V) |
| | § | |
| KERWIN BURL STEPHENS, | § | Case No. 21-40817-elm-11 |
| | § | |
| THUNDERBIRD OIL & GAS, LLC, | § | Case No. 21-41010-elm-11 |
| | § | |
| THUNDERBIRD RESOURCES, LLC, | § | Case No. 21-41011-elm-11 |
| | § | |
| Debtors. | § | Jointly Administered Under |
| | § | Case No. 21-40817-elm-11 |
| | § | |
| TIBURON LAND AND CATTLE, LP and | § | |
| TREK RESOURCES, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Adversary No. 21-04040 |
| | § | |
| KERWIN BURL STEPHENS, | § | |
| THUNDERBIRD OIL & GAS, LLC, and | § | |
| THUNDERBIRD RESOURCES, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court for determination in this adversary proceeding is the *State Court*

*Plaintiffs' Motion to Remand* [Docket No. 7] (the "**Motion**") filed by Plaintiffs Tiburon Land and

Cattle, LP ("**Tiburon**") and Trek Resources, Inc. ("**Trek**" and together with Tiburon, the "**Plaintiffs**"). Pursuant to the Motion, the Plaintiffs seek the Court's remand of all claims and causes of action removed to this Court (collectively, the "**Removed Claims**") by Defendants Kerwin Burl Stephens ("**Stephens**"), Thunderbird Oil & Gas, LLC ("**Thunderbird Oil**") and Thunderbird Resources, LLC ("**Thunderbird Resources**" and together with Stephens and Thunderbird Oil, the "**Debtor Defendants**") from Cause No. DC-2013-0016 (the "**Original State Court Action**") in the 32nd Judicial District Court of Fisher County, Texas (the "**State Trial Court**") that have not already been remanded.[1] The Plaintiffs assert that the Removed Claims must be remanded because they were untimely removed or, alternatively, should be remanded on the basis of permissive abstention and equitable remand.

Stephens has filed a response in opposition to the Motion[2] in which both Thunderbird Oil and Thunderbird Resources have joined.[3] Arguing that the removal was timely and that the factors relevant to permissive abstention and equitable remand favor the Court's retention of jurisdiction, Stephens requests the Court's denial of the Motion in all respects.

The Court conducted a hearing on the Motion (along with several other matters involving the same parties) on November 15 and 16, 2021. Having now considered the Motion, Stephens' response (and the joinders therein by the other Debtor Defendants), the Plaintiffs' additional pre-hearing brief,[4] the evidence introduced, and the representations and arguments of counsel, the Court will deny the Motion for the reasons set forth herein.[5]

---

[1] *See* Docket No. 25 (order remanding certain claims and causes of action to the State Trial Court with the consent of all parties).

[2] Docket No. 10.

[3] *See* Docket Nos. 11 and 12.

[4] *See* Docket No. 251 in Case No. 21-40817.

[5] On January 26, 2022, Stephens filed a *Supplemental Brief* [Docket No. 29] in response to which the Movants filed a *Reply* [Docket No. 30] on February 4, 2022. Because, in each case, leave to file the Supplemental Brief and Reply

## *FACTUAL BACKGROUND*

### A. *The Fisher County Oil and Gas Opportunity*[6]

The events leading up to the dispute between the parties in this adversary proceeding go back to 2011 when Richard Raughton ("**Raughton**") became aware of a growing interest in oil and gas properties in Fisher County, Texas. Raughton, the holder of a degree in geology with a concentration in engineering, had previously conducted geological studies of a shale formation in Fisher County, and the indications of interest corresponded to the geological studies. Raughton sought to leverage the information that he had obtained from the studies in a way that he could profit from the developing Fisher County oil and gas play. Lacking sufficient capital of his own to fully capitalize on the opportunity, however, he reached out to friends and business contacts to invite them to participate in the project.

Among the individuals contacted by Raughton was Stephens, a practicing attorney who had previously performed various legal services for Raughton and certain of his entities, and who had also previously participated with Raughton in a few oil and gas investments involving the Barnett Shale. Ultimately, Raughton, Stephens, and two others, Chester Carroll ("**Carroll**") and Lowry Hunt ("**Hunt**"), would agree to participate in a venture to acquire Fisher County oil and gas leases and options for such leases with an eye towards thereafter flipping them to interested buyers for a profit. Each of these individuals pledged to invest $125,000 to get the project off the ground.

---

was neither requested nor granted, the Court has not considered and will not consider the Supplemental Brief and Reply.

[6] Unless otherwise indicated, the background facts set out in parts A and B of the Factual Background come from *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 697-700 (Tex. App. – Eastland 2019, pet. denied) (admitted into evidence as Plaintiffs' Exh. 7 and Debtors' Exh. 4).

By October 2011, additional capital was needed to move the project forward. At that point, Carroll successfully recruited Tom Taylor ("**Taylor**"), another regular oil and gas investor, to join the effort. Thereafter, in an October 7, 2011 letter agreement that would come to be known as the "Alpine Letter Agreement," Raughton, Stephens, Carroll, Hunt and Taylor collectively mapped out how the project would proceed. Among other things, they identified the entities through which each of the individuals would participate: Raughton through Arapaho Energy, LLC ("**Arapaho**"); Stephens through Thunderbird Oil; Carroll through Alpine Petroleum ("**Alpine**") (a d/b/a name used by Carroll); Hunt through L.W. Hunt Resources, LLC ("**Hunt Resources**"); and Taylor through Paradigm Petroleum Corporation ("**Paradigm**"). While not a party to the agreement, Thunderbird Land Services, LLC ("**Thunderbird Land**"), another Stephens company, was to provide landman services for the project at its customary rate for such services.

Under the terms of the Alpine Letter Agreement, Arapaho, Thunderbird Oil, Alpine (Carroll) and Hunt Resources (collectively, the "**Alpine Group**") were to collectively contribute $500,000 and all of the oil and gas leases and options that they held at the time as described in exhibits to the agreement, and Paradigm was to contribute $4,500,000. Going forward, the existing oil and gas leases and options and all leases and options thereafter acquired would be held in Paradigm's name, Paradigm was to have control over the approval of future acquisitions and sales, and Paradigm was to have control over the scope of the project. The Alpine Letter Agreement also detailed how the proceeds from sales were to be divided among the parties.

With respect to Paradigm's investment obligation, Taylor, in turn, recruited an additional set of investors to participate in what he referred to as the "Three Finger/Black Shale Prospect" in Fisher County, Texas, describing it as a project involving 25,000 net mineral acres. Paradigm and the additional investors/investor-related parties entered into a separate "Participation Agreement,"

effective October 18, 2011. Tiburon and Trek were among the parties to the Participation Agreement. Pursuant to the Participation Agreement, Paradigm was to contribute $1,000,000 and each of the other parties to the agreement was to contribute $500,000 each.

Pursuant to later amendments and an addendum to the Participation Agreement, Lazy T Royalty Management, LP ("**Lazy T Management**") was substituted for Paradigm, with Paradigm's status changed to "agent for the Parties," and the Alpine Group was added as a party. Tiburon and Trek would later assert that the Participation Agreement created a partnership referred to as the Three Finger Black Shale Group partnership ("**Three Finger**").

**B.     The Devon Transactions**

The venture proved to be extremely successful. In January 2012, Devon Energy Production Company, L.P. ("**Devon**") entered into a purchase and sale agreement with Paradigm pursuant to which Devon agreed to purchase 25,000 net mineral acres of oil and gas leases for $900 per acre (the "**Devon Agreement**"). Additionally, Devon was granted an option to purchase any additional Fisher County oil and gas acreage that Paradigm and its associates might thereafter acquire subject to Devon's corresponding agreement to not acquire any oil and gas leases from Fisher County mineral owners directly. Ultimately, the Devon Agreement was amended to increase the acreage to 30,000 net mineral acres for $25 million (subject to adjustments).

The Devon Agreement was to be effective as of January 27, 2012. Just before the Devon deal closed, Stephens approached the rest of the Alpine Group to request a modification to their inter-group agreement. Claiming that the sharing of profits among the group was unfair to him, he successfully negotiated a modification to such terms to increase his share of the Alpine Group profits. Thereafter, the Devon transaction closed.

Prior to the closing, certain of the parties had failed to satisfy their funding obligations under the Alpine Letter Agreement or Participation Agreement, as applicable. Additionally, in finalizing the transaction, Devon personnel informed Taylor that Devon was interested in acquiring even more acreage. Taylor informed Stephens (among others) of such interest, but also told Stephens that while, individually, he was interested in continuing the project, the other parties to the Participation Agreement were not. As a result, along with a June 29, 2012, update to the Participation Agreement parties, Taylor included a proposed Termination of Participation Agreement for each of the parties to execute, effective June 1, 2012, whereby each of the parties would acknowledge completion of the project contemplated by the Participation Agreement and mutually release one another. While it appears that most of the parties executed the agreement, Tiburon and Trek refused.

Thereafter, Taylor, Carroll and Stephens moved forward with the acquisition of additional Fisher County oil and gas leases to the exclusion of other Participation Agreement parties, including, to some extent, Raughton and Hunt Resources, and ultimately sold an additional 43,602.79 net mineral acres to Devon.

### C.   Initiation of the Original State Court Action and Prepetition Proceedings Involving the Litigation

At some point, the additional sales were discovered. When the profits were not shared, Tiburon initiated the Original State Court Action in 2013 with the filing of its original petition against Taylor, Paradigm, Lazy T Management, Lazy T. Royalty, LLC (another Taylor affiliate, and together with Lazy T Management, the "**Lazy T Entities**"), and the Alpine Group. Thereafter Trek was added as a plaintiff and Tiburon and Trek added Carroll, Stephens, Thunderbird Oil and Thunderbird Resources as additional defendants. Then Raughton and Hunt Resources (collectively, the "**Intervenors**") intervened as plaintiff-side parties and over time added as

defendants, among others, Alpine (Carroll), Thunderbird Land, Stephens & Myers, LLP ("**SMLLP**") (Stephens' law firm), and the independent executrix of Taylor's estate (after the death of Taylor) (the "**Taylor Estate**"). Finally, Tiburon and Trek also added Three Finger as a plaintiff party (together with the Plaintiffs, the "**Plaintiff Parties**").[7]

On or about March 4, 2015, the Plaintiff Parties filed their Seventh Amended Petition pursuant to which they asserted claims against the defendants for, among other things, breach of contract, breach of fiduciary duty, fraud and conspiracy.[8] Separately, the Intervenors asserted claims against various of the defendants for, among other things, breach of contract, breach of fiduciary duty, and fraud.[9] The case was set for trial in late July 2015. Just prior to trial, however, on or about July 25, 2015, the Plaintiff Parties, the Intervenors, Arapahoe, the Taylor Estate, Paradigm, the Lazy T Entities, and certain other parties entered into a Compromise Settlement Agreement with Mutual Releases and Covenant Not to Sue, effective July 27, 2015, pursuant to which the Taylor Estate and Taylor-affiliated defendants settled with the Plaintiff Parties and Intervenors.[10]

Thereafter, beginning on July 28, 2015, the remaining, unsettled claims were tried to a jury. At the conclusion of a three-week trial, the jury was given a 69-page jury charge with 54 questions.[11] The jury returned a verdict (the "**Jury Verdict**") largely in favor of the Plaintiff Parties and Intervenors.[12] Importantly, in connection with post-verdict motion practice,[13] the

---

[7] *See Stephens*, 580 S.W.3d at 700-01.

[8] *See* Plaintiffs' Exh. 50.

[9] *See Stephens*, 580 S.W.3d at 700-01.

[10] *See* Debtors' Exh. 52.

[11] *See Stephens*, 580 S.W.3d at 702.

[12] *See* Plaintiffs' Exh. 5 (Jury Verdict).

[13] *See, e.g.*, Plaintiffs' Exhs. 19-25.

Plaintiff Parties opted to request judgment on the Three Finger claims instead of on the individual Tiburon and Trek claims. As a result, on March 30, 2016, the State Trial Court entered a Final Judgment in favor of Three Finger and the Intervenors (the "**State Court Judgment**"). Pursuant to the State Court Judgment, the State Trial Court awarded in excess of $18.4 million in compensatory and punitive damages to Three Finger against Stephens, awarded in excess of $4.5 million in compensatory damages to Three Finger against each of Thunderbird Oil and Thunderbird Resources, awarded in excess of $1.7 million in compensatory damages to Raughton against each of Stephens, Thunderbird Oil and Thunderbird Resources, and awarded roughly $2.85 million in compensatory damages to Hunt Resources against each of Stephens, Thunderbird Oil and Thunderbird Resources, in each case exclusive of prejudgment interest and costs.[14]

Appeals from the State Court Judgment were timely lodged by Stephens and defendants affiliated with him (including Thunderbird Oil and Thunderbird Resources) and by the Intervenors. On June 28, 2019, the Eleventh Court of Appeals at Eastland, Texas (the "**Texas Appellate Court**") issued its ruling (the "**Appellate Ruling**").[15] In relation to the judgment awarded to Three Finger against the Debtor Defendants, the Texas Appellate Court reversed and rendered judgment that Three Finger take nothing. However, the court also remanded the case to the State Trial Court to permit the Plaintiffs (Tiburon and Trek) to pursue recovery, individually, based upon the jury's findings in favor of them. In relation to the judgment awarded to the Intervenors, the Texas Appellate Court reversed the State Court Judgment in part, and affirmed in part, ultimately upholding the damages awarded to the Intervenors against the Debtor Defendants.[16]

---

[14] *See* Plaintiffs' Exh. 6 (State Court Judgment).

[15] *See Stephens*, 580 S.W.3d at 696.

[16] *See id.* at 732.

In response to the Appellate Ruling, petitions for review by the Texas Supreme Court were filed by multiple parties, including Three Finger and the Debtor Defendants. On August 28, 2020, the Texas Supreme Court denied the petitions and on March 5, 2021, denied the parties' respective motions for rehearing.[17] Consequently, on March 10, 2021, the Texas Appellate Court issued its mandate, remanding the case to the State Trial Court for further proceedings.[18]

The next day, on March 11, 2021, the Plaintiffs filed a motion for entry of judgment in their favor based upon the Jury Verdict (the "**Motion for Judgment**").[19] In response, the Debtor Defendants filed a response in opposition and a motion for judgment *non obstante verdicto*. (the "**JNOV Motion**").[20] Prior to determination of the Motion for Judgment and the JNOV Motion, the Plaintiffs successfully petitioned the State Trial Court for pre-judgment injunctive relief against the Debtor Defendants. Among other things, the injunction orders issued precluded Stephens from transferring, disposing of, or otherwise using any of his assets through at least April 26, 2021.[21]

Separately, the Intervenors filed a motion to request severance of their claims from the Plaintiffs' claims and for entry of an order providing for payment of the portion of the State Court Judgment in their favor against Stephens and Thunderbird Resources from the supersedeas bonds that had been posted pending appeal. On March 31, 2021, the State Trial Court granted the Intervenors' request for severance, opening a new Cause No. DC-2013-0016A (the "**Severed State Court Action**") into which all of the claims of the Intervenors (with one exception)[22] were moved,

---

[17] *See* Debtors' Exh. 20.

[18] *See* Debtors' Exh. 23.

[19] *See* Plaintiffs' Exh. 8.

[20] *See* Plaintiffs' Exhs. 9 and 10.

[21] *See* Debtors' Exhs. 59 and 60.

[22] On March 30, 2021, Thunderbird Land filed for bankruptcy protection in the Northern District of Texas (Case No. 21-10042 in the Abilene Division). Therefore, the Intervenors' claims against Thunderbird Land were not moved to the Severed State Court Action.

and entered an order on the Intervenors' request for collection from the supersedeas bonds that differed from the requested relief on account of the terms of a Rule 11 agreement between the Plaintiffs and Intervenors.[23] On April 6, 2021, the Debtor Defendants filed objections to the March 31 orders and a request for reconsideration.[24]

D.    **The Debtor Defendants' Bankruptcy Filings, the Plaintiffs' Assertion of Claims Against the Bankruptcy Estates, and Removal of the Original State Court Action**

On April 7, 2021, Stephens filed a voluntary petition for relief under chapter 11 (subchapter V) of the Bankruptcy Code, thereby initiating Case No. 21-40817 with this Court. Thereafter, on April 28, 2021, each of Thunderbird Oil and Thunderbird Resources also filed a voluntary petition for relief under chapter 11 (subchapter V) of the Bankruptcy Code, thereby initiating Case Nos. 21-41010 and 21-41011, respectively. The Court thereafter ordered all three bankruptcy cases to be jointly administered under Case No. 21-40817 (hereafter referred to as the "**Bankruptcy Case**").

On June 16, 2021, Tiburon filed a proof of claim against Stephens (assigned Claim No. 10 in Case No. 21-40817) to assert a claim against the Stephens bankruptcy estate in the amount of $4,747,839 based upon the Jury Verdict and Tiburon's claims against Stephens in the Original State Court Action.[25] On the same date, Trek filed a proof of claim against Stephens (assigned Claim No. 11 in Case No. 21-40817) to assert a claim against the Stephens bankruptcy estate in the amount of $4,747,839 based upon the Jury Verdict and Trek's claims against Stephens in the Original State Court Action.[26] Tiburon's and Trek's claims against the Stephens bankruptcy estate

---

[23] *See* Debtors' Exhs. 21 and 22 (exhibit B thereto).

[24] *See* Debtors' Exh. 22.

[25] *See* Debtors' Exh. 61.

[26] *See* Debtors' Exh. 62.

are collectively referred to herein as the "**Plaintiffs' Stephens Bankruptcy Claims**."  Stephens has filed an objection to each of the Plaintiffs' Stephens Bankruptcy Claims in the Bankruptcy Case.[27]

On July 6, 2021, the 90th day after commencement of the Stephens bankruptcy case and the 69th day after commencement of the bankruptcy cases of Thunderbird Oil and Thunderbird Resources (collectively, the "**Thunderbird Debtors**"), the Debtor Defendants jointly removed all remaining claims and causes of action in the Original State Court Action to this Court pursuant to 28 U.S.C. § 1452, thereby initiating the current adversary proceeding.

The next day, on July 7, 2021, Tiburon filed a proof of claim against Thunderbird Oil (assigned Claim No. 9 in Case No. 21-41010) to assert a claim against the Thunderbird Oil bankruptcy estate in the amount of $1,773,162 based upon the Jury Verdict and Tiburon's claims against Thunderbird Oil in the Original State Court Action, and a proof of claim against Thunderbird Resources (assigned Claim No. 13 in Case No. 21-41011) to assert a claim against the Thunderbird Resources bankruptcy estate in the amount of $677,201 based upon the Jury Verdict and Tiburon's claims against Thunderbird Resources in the Original State Court Action.[28] On the same date, July 7, 2021, Trek also filed a proof of claim against Thunderbird Oil (assigned Clam No. 10 in Case No. 21-41010) to assert a claim against the Thunderbird Oil bankruptcy estate in the amount of $1,773,162 based upon the Jury Verdict and Trek's claims against Thunderbird Oil in the Original State Court Action, and a proof of claim against Thunderbird Resources (assigned Claim No. 14 in Case No. 21-41011) to assert a claim against the Thunderbird Resources bankruptcy estate in the amount of $677,201 based upon the Jury Verdict and Trek's claims against

---

[27] *See* Debtors' Exhs. 79 and 80.

[28] *See* Claims Registers of Case Nos. 21-41010 and 21-41011.

Thunderbird Resources in the Original State Court Action.[29] Tiburon's and Trek's claims against the bankruptcy estates of the Thunderbird Debtors are collectively referred to herein as the "**Plaintiffs' Thunderbird Bankruptcy Claims**." To date, no objections have been lodged to any of the Plaintiffs' Thunderbird Bankruptcy Claims; however, the underlying Removed Claims against the Thunderbird Debtors are disputed in this adversary proceeding.

## *DISCUSSION*

### A. *Timeliness of Removal*

The Plaintiffs first assert that remand of the Removed Claims is required because the Debtor Defendants failed to remove the Original State Court Action within the 30-day period set out in 28 U.S.C. § 1446. Stephens responds that the deadline for removal under 28 U.S.C. § 1452 (the removal provision invoked by the Debtor Defendants) is set out in Rule 9027 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), not 28 U.S.C. § 1446, and that removal of the Removed Claims was timely taken within the 90-day period provided by Bankruptcy Rule 9027. In reply, the Plaintiffs argue that the provisions of 28 U.S.C. § 1446 take precedence over the provisions of Bankruptcy Rule 9027 and, therefore, the 30-day deadline of 28 U.S.C. § 1446 controls. For the following reasons, the Court agrees with the Debtor Defendants, finding the 90-day deadline of Bankruptcy Rule 9027 to be applicable and that the removal of the Removed Claims was timely taken.

Chapter 89 of title 28 of the United States Code provides for two types of removal: (1) the removal of an entire civil action,[30] and (2) the removal of individual claims and causes of action asserted within a civil action.[31] Section 1452 of title 28 provides for the latter type of removal. It

---

[29] *See id.*

[30] *See, e.g,* 28 U.S.C. §§ 1441(a) and (d), 1442(a)-(b), 1442a, 1443, 1444, 1453(b), 1454(a).

[31] *See, e.g.,* 28 U.S.C. § 1452(a).

provides that any party may remove any claim or cause of action in a civil action (other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce its police or regulatory power) to the federal district court[32] where the civil action is pending if the federal district court has jurisdiction of such claim or cause of action under 28 U.S.C. § 1334.[33] Section 1334 of title 28, in turn, sets out jurisdictional provisions with respect to bankruptcy cases and bankruptcy-related proceedings.[34]

Importantly, section 1446 of title 28 (titled "Procedure for the removal of civil actions") – the provision relied upon by the Plaintiffs – regulates the removal of *civil actions* (the first type of removal), not the removal of *claims and causes of action* in a civil action (the second type of removal).[35]  Inasmuch as the removal of an entire civil action is a right ordinarily exercisable only by a defendant (or defendants),[36] the removal deadlines imposed by section 1446 naturally focus on when the defendant has been put on notice of the litigation.  In particular, the removal of a civil action from state court must be effectuated with the filing of a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summon upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."[37]

---

[32] If the district court has a standing order of reference in place pursuant to 28 U.S.C. § 157(a), then the removal is ordinarily taken directly to the bankruptcy court.  *See* 28 U.S.C. § 157(a).

[33] *See* 28 U.S.C. § 1452(a).

[34] *See* 28 U.S.C. § 1334(a)-(b).

[35] *See* 28 U.S.C. § 1446.

[36] The one notable exception is found in 28 U.S.C. § 1454 which permits any party to remove a civil action in which a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights has been asserted.  *See* 28 U.S.C. § 1454(a), (b)(1).

[37] 28 U.S.C. § 1446(b)(1); *see also* 28 U.S.C. §§ 1446(b)(3) (extending deadline where the civil action, as framed in the initial pleading, is not removable), 1454(b)(2) (permitting an extension of the § 1446(b) deadline at any time for cause in the case of civil actions removable under 28 U.S.C. § 1454).

No similar removal deadlines are set out in title 28 with respect to the removal of individual claims and causes of action under section 1452. Consequently, the gap has been filled with Bankruptcy Rule 9027.[38] As relevant to the situation before the Court, Bankruptcy Rule 9027 provides that if the to-be-removed claim or cause of action has been asserted in a civil action that is pending as of the commencement of the bankruptcy case, then the notice of removal must be filed by no later than 90 days after the order for relief in the bankruptcy case.[39] In a voluntarily-initiated bankruptcy case, the filing of the case constitutes the order for relief.[40] Thus, Bankruptcy Rule 9027 imposes a deadline of 90 days after the date of the filing of the voluntarily-initiated bankruptcy case where the claim or cause of action to be removed has been asserted within a civil action that is already pending as of the date of the bankruptcy filing.

The Plaintiffs rely upon *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995) and *In re Asbestos Litigation*, No. CV 01-1790-PA, 2002 WL 649400 (D. Oreg. Feb. 1, 2002) to the contrary. Such reliance, however, is misplaced. In *Things Remembered*, the Supreme Court considered the applicability of section 1447 (titled "Procedure *after* removal *generally*") (emphasis added) to a removal taken pursuant to section 1452. In that case the debtor defendant had filed two different notices of removal to remove a state court action to federal court – one with the federal district court based upon 28 U.S.C. § 1441(a) (removal on the basis of federal question jurisdiction) and one with the bankruptcy court based upon 28 U.S.C. § 1452(a) (removal on the

---

[38] *See* Fed. R. Bankr. P. 9027 (adopted in accordance with the rule-making authority of 28 U.S.C. § 2075); *see also Paxton Nat'l Ins. Co. v. British Am. Assocs. (In re Pacor, Inc.)*, 72 B.R. 927, 928-31 (Bankr. E.D. Pa.) (discussing the genesis and evolution of what is now Bankruptcy Rule 9027), *aff'd*, 86 B.R. 808 (E.D. Pa. 1987), *appeal dism'd*, 1988 WL 235479 (3rd Cir. 1988).

[39] *See* Fed. R. Bankr. P. 9027(a)(2). A longer period of time for removal may apply if, after the 90-day period, the automatic stay in relation to the claim or cause of action is terminated or a chapter 11 trustee is appointed. *See id.*

[40] *See* 11 U.S.C. § 301(b).

basis of bankruptcy jurisdiction).[41]  The district court referred the removed district court action to the bankruptcy court so that the two removal proceedings could be consolidated for further proceedings.[42]  The plaintiff in the action sought remand of the consolidated case on the basis of the alleged untimeliness of the removals.  While the bankruptcy court found the removal under § 1452 to not be timely under Bankruptcy Rule 9027, it found the removal under § 1441 to be timely under § 1446 and therefore denied the request for remand.[43]  On appeal, the district court determined that both removals were untimely and that the bankruptcy court lacked jurisdiction of the consolidated case as a result.  Consequently, the district court reversed the bankruptcy court's order and ordered the case to be remanded to the bankruptcy court for entry of an order remanding the case back to state court.[44]  Upon further appeal to the Sixth Circuit, the Sixth Circuit dismissed the appeal pursuant to § 1447(d) and § 1452(b), both of which limit the circumstances under which an appeal may be taken from an order of remand.[45]

On further appeal to the Supreme Court, the Supreme Court considered whether the provisions of § 1452(b) exclusively govern the remand of a state court action in which claims or causes of action related to a pending bankruptcy case have been asserted or if, instead, the remand provisions of § 1447(d) also apply.  The Court found the latter to be the case, explaining that "[t]here is no express indication in § 1452 that Congress intended that statute to be the exclusive

---

[41] *See Things Remembered, Inc*., 516 U.S. at 125-26.

[42] *See id.* at 126.

[43] *See id*.

[44] *See id*. at 126-27 & n.2.

[45] *See id*. at 127; *see also* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."); 28 U.S.C. § 1452(b) ("The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.  An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.").

provision governing removals and remands in bankruptcy.  Nor is there any reason to infer from § 1447(d) that Congress intended to exclude bankruptcy cases from its coverage."[46]  Consequently, regardless of whether the action was removed under § 1441(a) or § 1452(a), the Court found the Sixth Circuit's dismissal of the appeal to be proper pursuant to § 1447(d).[47]  Importantly, in doing so, the Court made absolutely no reference at all to the applicability/inapplicability of Bankruptcy Rule 9027 to a removal under § 1452(a).  Therefore, the Plaintiffs' reliance on the case is unhelpful.

Turning next to *Asbestos Litigation*, in considering the timeliness of a debtor's removal of state court litigation under § 1452(a), the District Court for the District of Oregon, construing the language in *Things Remembered* broadly, concluded that, just like § 1447(d), § 1446(b) must also apply to a removal under § 1452(a).[48]  Then, finding the removal deadlines of Bankruptcy Rule 9027 to conflict with the removal deadlines of § 1446(b), the court opined that the deadlines of § 1446(b) must govern because a statutory provision takes precedence over a conflicting procedural rule.[49]  Thus, finding the removal at issue to be untimely under § 1446(b), the court remanded the case to state court.[50]  Respectfully, this Court disagrees with the underlying premise of the Oregon court's analysis – namely, that § 1446(b) applies to the removal of claims and causes of action under § 1452(a).

Unlike § 1447, which governs the "[p]rocedure *after* removal *generally*" (emphasis added), § 1446 is more narrowly focused on providing a "[p]rocedure for the removal of *civil actions*" (emphasis added) – only the first of the two types of removal.  The inapplicability of § 1446 to a

---

[46] *Things Remembered, Inc.*, 516 U.S. at 129.

[47] *Id.*

[48] *See Asbestos Litig.*, 2002 WL 649400, at *3.

[49] *See id.* (citing *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984)).

[50] *Id.* at *3.

removal under § 1452(a) is also exemplified by the fact that the provisions of § 1446 do not align with all of the forms of removal that may be taken under § 1452(a).[51]  For example, whereas § 1446(b) sets out defendant-based deadlines for removal,[52] § 1452(a) is a removal provision equally available to a plaintiff.[53]  Additionally, whereas § 1446 sets out procedures for a removal from state court,[54] removals under § 1452(a) are not limited to state court.[55]  Thus, because § 1446 is not designed to address a § 1452(a) removal, and because Bankruptcy Rule 9027 only applies to removals under § 1452(a), contrary to the court's conclusion in *Asbestos Litigation*, there is no conflict to resolve between § 1446 and Bankruptcy Rule 9027.  Bankruptcy Rule 9027, alone, sets out a comprehensive set of procedural requirements for a removal under § 1452(a).[56]

---

[51] The Court recognizes that often a removing party will purport to remove an entire state court civil action pursuant to section 1452(a).  In such instance, notwithstanding the purported removal of the entire action, each individual claim and cause of action asserted within the civil action must satisfy the requirements of removal under section 1452(a) in order for the removal of such claim/cause of action to pass muster under section 1452(a).

[52] *See* 28 U.S.C. § 1446(b)(1) (focusing on date of *defendant's* receipt of initial pleading/summons), (b)(2) (referring to removal by *defendants* under § 1441(a)).

[53] *See* 28 U.S.C. § 1452(a) ("A party" may remove any claim or cause of action for which bankruptcy jurisdiction exists).

[54] *See* 28 U.S.C. § 1446(a) (providing for the removal of any civil action "from a State court").

[55] *See* 28 U.S.C. § 1452(a) (providing for the removal of a claim or cause of action in any civil action "other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power"); *see, e.g., Quality Tooling, Inc. v. United States*, 47 F.3d 1569, 1572 (Fed. Cir. 1995) ("We conclude that 28 U.S.C. § 1452 is not limited by its terms to removing a claim from a state court, and that the transfer here was properly authorized."); *Chickaway v. Bank One Dayton, N.A.*, 261 B.R. 646, 648-49 (S.D. Miss. 2001) (finding removal of claims in tribal action to be proper under § 1452(a)); *see also California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 103 (2nd Cir. 2004), *cert. denied*, 543 U.S. 1080 (2005). *But see also You Fit, Inc. v. Pleasonton Fitness, LLC*, Case No. 8:12-cv-1917-JDW-EAJ, 2012 WL 12905650, at *1 (M.D. Fla. Oct. 19, 2012) (finding the language of § 1452(a) to not authorize the "removal" of a claim or cause of action from one federal district court to another federal district court (or to a bankruptcy court in another district)).

[56] *See* Fed. R. Bankr. P. 9027(a)(1) (requiring notice of removal to be filed with the clerk of court for the district and division within which is located the "state or federal court" where the civil action is pending; and setting out the content requirements of the notice of removal, including a statement of the facts that entitle "the party filing the notice" to remove the claims/causes of action at issue); Fed. R. Bankr. P. 9027(a)(2)-(3) (setting out procedures for the removal of a "claim or cause of action").  Importantly, this is not to suggest that section 1446(b) will never apply to the removal of a civil action in which claims and causes of action related to a pending bankruptcy case are pending.  Where an entire state court civil action is removed, to the extent the removal has been taken pursuant to a provision other than section 1452(a), section 1446(b) will apply.  Bankruptcy Rule 9027 only applies to the removal of claims and causes of action under section 1452(a).  In other words, as in *Things Remembered*, there is no reason that section 1446(b) and Bankruptcy Rule 9027 "cannot comfortably coexist in the bankruptcy context." *Things Remembered, Inc.*, 516 U.S. at 129.

Moreover, both the Fifth Circuit Court of Appeals and the District Court for the Northern District of Texas have referred to the deadlines of Bankruptcy Rule 9027 in considering the timeliness of a removal under § 1452(a).[57]  And a majority of the courts around the country that have expressly considered the question of whether the deadlines of § 1446(b) or Bankruptcy Rule 9027 apply to a removal under § 1452(a) have concluded that the deadlines of Bankruptcy Rule 9027 apply.[58]  The Court finds no reason to now deviate from existing circuit and district court precedent or from the majority view.

Here, the Debtor Defendants removed the Removed Claims under § 1452(a)[59] and it is undisputed that each of the Removed Claims is a claim for which jurisdiction exists under section 1334 of title 28.[60]  As such, Bankruptcy Rule 9027 governs the timeliness of the removal.  Because the Debtor Defendants removed the Removed Claims within 90 days of the filing of their respective bankruptcy cases, the removal was timely.  Consequently, the Plaintiffs' request for remand on the basis of the alleged untimeliness of the removal will be denied.

---

[57] *See Edge Petroleum Op. Co., Inc. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 299 (5th Cir.) (citing Bankruptcy Rule 9027(a)(2)(A) in finding a removal within 90 days of the order for relief in bankruptcy to be timely), *cert. denied*, 552 U.S. 1022 (2007); *Regal Row Fina, Inc. v. Washington Mut. Bank, FA*, No. Civ. A. 3:04-CV-1033, 2004 WL 2826817, at *4 (N.D. Tex. Dec. 9, 2004) ("The timeliness of the removal of an action that is related to a bankruptcy proceeding is governed by Federal Rule of Bankruptcy Procedure 9027.").

[58] *See, e.g., Martin v. Chrysler Group, LLC*, Civ. Action No. 6:12-CV-00060, 2013 WL 5308245, at *3 (W.D. Va. Sept. 20, 2013) ("[T]he removal of this action is governed by 28 U.S.C. § 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure, not 28 U.S.C. § 1446, and pursuant to 28 U.S.C. § 1452, removal here was timely"); *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.)*, 194 B.R. 750, 756 (D.N.J. 1996) (agreeing with "[t]he majority of courts [that] have upheld the applicability of Bankruptcy Rule 9027 to Section 1452 and enforced a ninety day time limitation"); *Textron Inv. Mgmt. Co., Inc. v. Struthers Thermo-Flood Corp.*, 169 B.R. 206, 209-10 (D. Kan. 1994); *Horn v. Johnson & Johnson (In re Imerys Talc Am., Inc.)*, Adv. No. 19-01038-JDL, 2019 WL 2575048, at *2 (Bankr. W.D. Okla. June 21, 2019).

[59] *See* Docket No. 1 (introductory paragraph).

[60] *See* Motion, at p.3 (acknowledging that the proceeding involving the Removed Claims is related to the Bankruptcy Case).  Indeed, the Plaintiffs have filed proofs of claim against each of the Debtor Defendants that expressly refer to the Removed Claims, making the Removed Claims integral to the core claims administration process of the Bankruptcy Case.

## B.      *Permissive Abstention and Equitable Remand*

Next, the Plaintiffs alternatively request remand pursuant to the permissive abstention and equitable remand provisions of 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b), respectively.  The Debtor Defendants argue that the factors applicable to permissive abstention and equitable remand do not warrant remand.  For the reasons that follow, the Court agrees with the Debtor Defendants.

Section 1334(c)(1) provides that nothing within the jurisdictional provisions of section 1334 prevents a court "in the interest of justice, or in the interest of comity with State court or respect for State law," from abstaining from hearing a proceeding with respect to which bankruptcy jurisdiction exists under section 1334.[61]  Section 1452(b), in turn, provides that the court to which a claim or cause of action is removed may remand such claim or cause of action "on any equitable ground."[62]  Because these two provisions are similar in purpose, courts have adopted the following 14 factors to consider and balance in determining a request for permissive abstention and equitable remand:[63]

(1)      The effect or lack thereof on the efficient administration of the estate if the court decides to remand or abstain;

(2)      The extent to which state law issues predominate over bankruptcy issues;

(3)      The difficult or unsettled nature of appliable law;

(4)      The presence of a related proceeding commenced in state court or another non-bankruptcy proceeding;

(5)      The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6)      The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)      The substance rather than the form of an asserted core proceeding;

---

[61] *See* 28 U.S.C. § 1334(c)(1).

[62] *See* 28 U.S.C. § 1452(b).

[63] *See, e.g., Lone Star Fund V (U.S.), LP v. Barlays Bank PLC*, Civil Action No. 3:08-CV-0261-L, 2008 WL 4449508, at *4-*5 (N.D. Tex. Sept. 30, 2008), *aff'd*, 594 F.3d 383 (5th Cir. 2010)*; Regal Row Fina, Inc.*, 2004 WL 2826817, at *8-*9; *Principal Life Ins. Co. v. JPMorgan Chase Bank, N.A. (In re Brook Mays Music Co.)*, 363 B.R. 801, 817 (Bankr. N.D. Tex. 2007).

(8)     The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)     The burden of the proceeding on the court's docket;

(10)    The likelihood that the commencement of the proceeding in the removal court involves forum shopping by one of the parties;

(11)    The existence of a right to a jury trial;

(12)    The presence in the proceeding of non-debtor parties;

(13)    Comity; and

(14)    The possibility of prejudice to the other parties in the action.

Each of these factors is considered in turn.

### 1.     *Effect on the Efficient Administration of the Estates*

The Plaintiffs assert that remand will promote the efficient administration of the estates because the State Trial Court, which is already familiar with the Original State Court Action, can promptly determine the Removed Claims based upon the Jury Verdict, the trial record, and, as to certain matters, principles of res judicata and/or collateral estoppel.  They assert that this Court's retention of jurisdiction, on the other hand, will only lead to inefficiency and delay because the Court will be required to get up to speed on issues already addressed by the State Trial Court.  The Debtor Defendants disagree, asserting that the allowability of the Plaintiffs' Stephens Bankruptcy Claims and Plaintiffs' Thunderbird Bankruptcy Claims (collectively, the "**Bankruptcy Claims**") (which incorporate the Removed Claims) is of central importance to the administration of the estates and that this Court is just as well equipped to consider the Jury Verdict and trial record in determining the Motion for Judgment and JNOV Motion.  Moreover, the Debtor Defendants argue that the equitable disgorgement relief sought by the Plaintiffs pursuant to the Motion for Judgment is inherently discretionary in nature and is only appropriate for consideration and determination by this Court in the context of all of the claims that have been asserted against the estates.  Finally,

the Debtor Defendants also highlight the loss of control that would result from remand and the likely delay that would allegedly result from certain pre-judgment proceedings.[64]

While both perspectives have a level of appeal, the Court finds the articulated considerations and concerns of the Debtor Defendants to be of greater weight. Of note, in support of their assertion that the State Trial Court would be able to timely adjudicate the Removed Claims, the Plaintiffs presented the testimony of Jeff Levinger, an experienced Texas appellate lawyer who participated in the jury charge conference as part of the Plaintiff Parties' legal team. Mr. Levinger methodically walked the Court through how the State Trial Court would review the Jury Verdict in determining the Removed Claims. In the process of doing so, Mr. Levinger, somewhat ironically, also persuaded the Court that the Court can just as easily undertake the same exercise. In other words, the Court is not convinced that there would be any material gain in efficiency if the Removed Claims are remanded. On the flip side, and more importantly, a remand of the Removed Claims would lead to the loss of all control by this Court with respect to the timing of the claims adjudication process which, in turn, is critical to moving the Bankruptcy Case forward. And certain issues of liability (*e.g.*, equitable disgorgement relief) are, in fact, properly left to this Court's consideration as part of the claims allowance process dictated by the Bankruptcy Code.[65]

---

[64] In this regard, the parties spent considerable time at the hearing attempting to persuade the Court of the permissibility/impermissibility and/or appropriateness/inappropriateness, as applicable, of various *ex parte* communications that took place between the presiding judge of the State Trial Court and one of the attorneys for the Intervenors during the pendency of the state court proceedings. *See generally* Debtors' Exh. 82 (exhibits 1-8 thereto). While the Court declines to make any determination with respect to the propriety of such communications inasmuch as that is a matter more appropriately left to the state judicial system to address, the Court does find that the existence of the communications, at a minimum, presents a layer of distraction and the potential of delay.

[65] In particular, pursuant to the Motion for Judgment the Plaintiffs have requested monetary relief in the form of disgorgement, an equitable remedy. *See* Plaintiffs' Exh. 8. While the Plaintiffs claimed at the hearing that such relief is not *currently* part of the claims that they have asserted against the bankruptcy estates of the Debtor Defendants, if and to the extent the Plaintiffs are permitted to amend their Bankruptcy Claims to include such requested relief, the allowance of their Bankruptcy Claims to such extent will be subject to estimation by the Court pursuant to section 502(c) of the Bankruptcy Code. *See* 11 U.S.C. § 502(c)(2) ("There shall be estimated for [the] purpose of allowance [of a claim against the bankruptcy estate under section 502] … any right to payment arising from a right to an equitable remedy for breach of performance").

In light of the foregoing, and given the magnitude of the asserted Bankruptcy Claims, the fact that adjudication of the Removed Claims is central to the allowance/disallowance of each of the Bankruptcy Claims, and the fact that the allowance/disallowance of the Bankruptcy Claims is, in turn, of material relevance to the confirmability of the chapter 11 restructuring plans proposed by the Debtor Defendants, the Court finds that the remand of the Removed Claims is likely to have an adverse effect on the efficient administration of the Debtor Defendants' bankruptcy estates. Accordingly, this factor weighs against abstention and remand.

### 2. State Law v. Bankruptcy Issues

The parties all agree that the Removed Claims involve causes of action that arise under state law. And while the allowability of the Bankruptcy Claims (which incorporate the Removed Claims) is an issue of bankruptcy law under section 502 of the Bankruptcy Code, the determination of such allowability continues to be dependent upon the application of state law.[66] Thus, in relation to the adjudication of the Removed Claims, state law issues predominate over bankruptcy issues and this factor weighs in favor of abstention and remand.

### 3. Difficult or Unsettled Nature of Applicable Law

None of the Removed Claims involves novel or particularly difficult factual or legal issues, nor do any of the Removed Claims involve unsettled questions of law. While the Plaintiffs highlight the fact that the Debtor Defendants have made various *Casteel* challenges[67] to the Jury Verdict in their objection to the Motion for Judgment[68] and suggest that *Casteel* issues can be

---

[66] *See, e.g.*, 11 U.S.C. § 502(b)(1) (requiring disallowance of a bankruptcy claim to the extent the claim is unenforceable against the debtor and property of the debtor under applicable (nonbankruptcy) law for a reason other than because such claim is contingent or unmatured).

[67] *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000) (reversible error presumed where a broad-form liability question submitted to the jury incorporates multiple theories of liability and one or more of those theories is invalid).

[68] *See* Plaintiffs' Exh. 9

tricky to resolve, particularly for a court that does not regularly address *Casteel* issues, the Court again notes Mr. Levinger's testimony to the effect that, in his view, none of the *Casteel* challenges raised by the Debtor Defendants is valid and that, even if they were, they were allegedly waived by the Debtor Defendants by virtue of their failure to object at the jury charge conference. Whether accurate or not, the Court finds nothing particularly novel, difficult or unsettled about the *Casteel* doctrine that warrants abstention and remand.[69] Thus, this factor is effectively neutral – neither favoring nor disfavoring abstention and remand.

### 4.    *Presence of Related Proceeding in Another Forum*

As a result of two partial remand orders previously entered by the Court, there are two related proceedings currently pending in state court. First, at the request of SMLLP and with the consent of all other parties to Adversary No. 21-04021, the Court entered an order in Adversary No. 21-04021 on November 22, 2021 remanding all pending claims and causes of action (excluding claims and causes of action involving the Debtor Defendants which were severed into Adversary No. 21-04038) to the State Trial Court under the Severed State Court Action.[70] Second, at the request of Stephens and with the consent of all other parties to this adversary proceeding (Adversary No. 21-04040), the Court entered an order on November 23, 2021 remanding all pending claims and causes of action against Thunderbird Land, Carroll and SMLLP to the State Trial Court under the Original State Court Action.[71]

Neither of the resulting state court proceedings involves any claims or causes of action against any of the Debtor Defendants. Nevertheless, because some of the post-judgment issues

---

[69] *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 228 n.17 (Tex. 2019) (citing *Casteel* with approval and providing comprehensive discussion of the varying facets of the *Casteel* doctrine).

[70] *See* Docket No. 69 in Adversary No. 21-04021.

[71] *See* Docket No. 25.

raised by the Debtor Defendants in this case may also be raised by one or more of the other parties in the state court proceedings, there exists some risk to the Plaintiffs of inconsistency in the rulings that this Court and the State Trial Court may hereafter respectively issue. Consequently, this factor weighs in favor of abstention and remand.

### 5. *Non-Bankruptcy Basis for Jurisdiction*

The sole basis for jurisdiction of the Removed Claims in federal court is 28 U.S.C. § 1334. Thus, this factor weighs in favor of abstention and remand.

### 6. *Relatedness/Remoteness of Proceeding to Bankruptcy Case*

Inasmuch as the Bankruptcy Claims against the bankruptcy estates of the Debtor Defendants are predicated upon the Removed Claims, the Removed Claims are not only related to the Bankruptcy Case, but they are central to the Bankruptcy Case and the administration of the Debtor Defendants' bankruptcy estates. Accordingly, this factor weighs against abstention and remand.

### 7. *Substance or Form of Core Proceeding Assertion*

A proceeding involving the adjudication of a disputed monetary claim against a debtor's estate is indisputably a core proceeding, inasmuch as it would not exist outside of bankruptcy.[72] Thus, because the Bankruptcy Claims asserted against the Debtor Defendants' bankruptcy estates by the Plaintiffs incorporate the Removed Claims, this adversary proceeding is inherently core in nature. As such, this factor weighs against abstention and remand.

### 8. *Feasibility of Severance of State Law Claims*

Here, there are no non-core state law claims capable of severance and remand. As indicated above, the Removed Claims are the very basis for the Bankruptcy Claims that the Plaintiffs have

---

[72] *See* 28 U.S.C. § 157(b)(2)(B); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987).

asserted against the Debtor Defendants' bankruptcy estates and, thus, the Removed Claims constitute core matters to be addressed in connection with administering the estates. Accordingly, this factor weighs against abstention and remand.

### 9. Burden on Court's Docket

The Court's existing caseload is not such that the retention of jurisdiction of the Removed Claims would unduly burden the Court's docket. Moreover, there has already been a trial and a Jury Verdict in relation to the Removed Claims. Therefore, absent the issuance of post-verdict relief that would require a new trial on one or more of the Removed Claims (a possibility that the Plaintiffs reject), the proceeding will simply involve a determination of liability based upon the Jury Verdict. Therefore, this factor weighs against abstention and remand.

### 10. Likelihood of Forum Shopping

The Plaintiffs assert that Stephens' bankruptcy filing on the alleged eve of having a judgment entered against him in the Original State Court Action, followed by removal of the Removed Claims, "strongly implies forum-shopping opportunism."[73] The Court agrees that such actions, considered in isolation, suggest forum shopping. In context, however, the Court is not as troubled.

First, the Court does not believe that Stephens' filing for bankruptcy protection, itself, was part of any scheme to forum shop. Instead, it was motivated by financial desperation in the face of the affirmance of the Intervenors' multi-million dollar judgment against him, the Intervenors' impending execution on the supersedeas bond posted by Stephens, which in turn would put the real estate that he had put up as collateral to obtain the bond at risk of foreclosure, the Texas Appellate Court's remand of the Plaintiffs' claims for further consideration, and, most notably, the

---

[73] Motion, at p.10.

pre-judgment injunction that the Plaintiffs successfully obtained against Stephens that precluded him from transferring, disposing of, or otherwise using *any* of his assets for a period of at least a month – thereby depriving him of the ability to purchase even basic living necessities.

Second, Stephens did not take action to remove the Removed Claims until *after* the Plaintiffs had asserted the Plaintiffs' Stephens Bankruptcy Claims in the Bankruptcy Case. Once the Plaintiffs caused the Removed Claims to become part of the claims administration process in the Bankruptcy Case, it was entirely foreseeable and understandable for Stephens to remove the Removed Claims, at least the ones asserted against him.

In the case of the Removed Claims against the Thunderbird Debtors, while the removal pre-dated the filing of the Plaintiffs' Thunderbird Bankruptcy Claims, given the interconnectedness between the Removed Claims against Stephens and the Removed Claims against the Thunderbird Debtors, it was rational for the Debtor Defendants to seek to have all of the Removed Claims determined on a consolidated basis. Moreover, immediately after the removal, the Plaintiffs' Thunderbird Bankruptcy Claims were filed against the Thunderbird Debtors' bankruptcy estates.

Thus, considered in context, the Debtor Defendants' removal of the Removed Claims was rational and had a purpose other than forum shopping. Accordingly, this factor weighs against abstention and remand.

### 11. *Existence of Jury Trial Right*

Inasmuch as a trial has already been conducted with the jury returning its Jury Verdict, this factor is irrelevant. Even if a new trial is ordered on one or more of the Removed Claims, because the Plaintiffs have filed the Bankruptcy Claims to pursue recovery on the Removed Claims against the Debtor Defendants' bankruptcy estates, they have invoked the equitable claims administration

process of this Court and thereby waived the right to a jury trial on any of the Removed Claims otherwise triable to a jury.[74]  Consequently, this factor weighs against abstention and remand.

### 12.  Presence of Non-Debtor Parties

The only remaining non-debtor parties to this adversary proceeding are the Plaintiffs.  And as indicated above, the Plaintiffs have invoked the Court's equitable jurisdiction in relation to adjudication of the Removed Claims by filing the Bankruptcy Claims against the Debtor Defendants' bankruptcy estates.  Consequently, this factor weighs against abstention and remand.

### 13.  Comity

At first blush, given that each of the Removed Claims arises under state law and given that a trial has already taken place and that a jury verdict has already been returned, both in state court, comity would appear to heavily favor abstention and remand.  On the flip side, however, ordinarily the filing of a proof of claim to assert a claim against a debtor's estate, even if predicated on state law, causes the bankruptcy objective of providing for the timely and centralized adjudication of all claims disputes in the bankruptcy court to override any conflicting comity considerations based upon the state law nature of the claim asserted.[75]  Thus, here, because the Plaintiffs have filed the Bankruptcy Claims to assert claims against the Debtor Defendants' bankruptcy estates based upon the Removed Claims, this factor is effectively neutral with respect to abstention and remand.

### 14.  Possibility of Prejudice to Other Parties

The Plaintiffs assert that other alleged co-conspirators in the Original State Court Action, such as Carroll, will face prejudice in the event the Removed Claims are not remanded because there exists a risk of inconsistent rulings by this Court and the State Trial Court on conspiracy

---

[74] See Langenkamp v. Culp, 498 U.S. 42, 44 (1990); Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 57-58 (1989); Katchen v. Landy, 382 U.S. 323 (1966).

[75] See also Regal Row Fina, Inc., 2004 WL 2826817, at *10.

issues. While the Court acknowledges the possibility of inconsistency on certain matters, the Removed Claims are not against any alleged co-conspirator parties other than the Debtor Defendants and, thus, any determination made in relation to the Removed Claims will not and cannot impose any liability on any such other alleged co-conspirators. Each of the other alleged co-conspirators will have the ability to independently challenge the Plaintiffs' conspiracy claims against them in the State Trial Court. Accordingly, the Court finds the risk to any alleged co-conspirators to be low.

The Debtor Defendants, on the other hand, assert that all other creditors in the Bankruptcy Case will face prejudice in the event of remand because there exists a risk of the reorganization efforts being stalled indefinitely while the parties await resolution of the state court proceedings. Given the magnitude of the Bankruptcy Claims that incorporate the Removed Claims, the Court finds such risk to, in fact, exist. Thus, on balance, this factor weighs against abstention and remand.

Having thus considered and weighed each of the foregoing factors, the Court finds that the factors, on balance, weigh against abstention and remand. Accordingly, the Court will deny the Plaintiffs' request for remand on permissive abstention and equitable remand grounds.

### *CONCLUSION*

Because removal of the Removed Claims was timely under Bankruptcy Rule 9027, and because permissive abstention and equitable remand of the Removed Claims is not warranted under 28 U.S.C. §§ 1334(c)(1) and 1452(b) after consideration of the 14 factors discussed above, the Court will deny the Motion.

## **ORDER**

For all of the foregoing reasons, it is accordingly:

**ORDERED** that the Motion be and is hereby DENIED.

### ###   END OF MEMORANDUM OPINION AND ORDER   ###